

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

April 27, 2020

**BY ECF**

The Honorable Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

  **Re:** *United States v. Xhevedet Lika*, 84 Cr. 499 (CS)

Dear Judge Seibel:

  The Government respectfully submits this letter in opposition to the defendant's emergency motion ("Def. Mot.") seeking compassionate release from custody 35 years into a life sentence imposed by Judge Vincent L. Broderick in 1985. The defendant was convicted after trial of (i) conspiracy to import heroin in violation of 21 U.S.C. § 936; (ii) conspiracy to distribute heroin in violation of 21 U.S.C. § 846; (iii) participating in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d); (iv) five substantive counts of heroin distribution in violation of 21 U.S.C. § 841; and (v) operating a continuing criminal narcotics enterprise in violation of 21 U.S.C. § 848. Now, the defendant seeks the Court's compassion owing to his health, age, and the coronavirus pandemic. Because the defendant has not satisfied the requirements of 18 U.S.C. § 3582(c), has not demonstrated extraordinary and compelling reasons warranting relief under 18 U.S.C. § 3582(c)(1)(A), and the Section 3553(a) factors counsel against the defendant's release, the defendant's motion should be denied.

**I. Background**

  **A. Lika's Underlying Criminal Conviction**

  According to the PSR, the defendant was "the most culpable . . . central figure of a loosely knit Albanian-Yugoslavian group who were responsible for the massive importation of heroin from Yugoslavia and Turkey." (Ex. A: PSR at 10). Testimony from trial demonstrated "the defendant's penchant for violence and intimidation, and his contempt for the American Judicial System." (*Id.*). The PSR characterized the defendant as a "ruthless, dangerous individual who clearly represents a threat to the community at large." (*Id.*).[1]

---

[1] Because the defendant was sentenced in 1985, electronic records related to the defendant's underlying conviction are limited. The Government has requested the defendant's case file from

The Honorable Cathy Seibel
April 27, 2020
Page 2

It bears noting that according to the PSR, during a recess in Court proceedings against the defendant in November 1984, a Deputy United States Marshal observed the defendant and an associate "huddled together" in the courthouse. (PSR at 3). A Special Agent notified the Marshal that he observed the associate hand something to the defendant. (*Id*.). A search of the defendant revealed a rolled up dollar bill, and two folded papers, each containing a white powdery substance that subsequent lab tests confirmed was more than 7 grams of cocaine. (*Id*.). A separate indictment with respect to the defendant's cocaine possession followed, *United States v. Xhevedet Lika*, 85 Cr. 90.

At the defendant's sentencing on March 13, 1985, Judge Broderick held a hearing pursuant to *United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978), at which Rudolph W. Guiliani, then-United States Attorney for the Southern District of New York, and Special Agent John Delmore of the Drug Enforcement Administration each testified. (Ex. C: Gov. Br. at *7). According to Mr. Guiliani and Special Agent Delmore, during the course of the defendant's trial, three John Doe informants independently volunteered information that the defendant had taken out contracts for the murder of Special Agent Delmore and Alan M. Cohen, the Assistant United States Attorney in charge of the defendant's prosecution. (*Id*.).

Judge Broderick sentenced the defendant to life imprisonment for his participation in a continuing criminal enterprise, deferred sentencing on the narcotics conspiracy counts, and imposed an aggregate, concurrent sentence of 65 years' imprisonment on all other counts. (Ex. C. at *3-*4; Ex. D: Inmate Data Sheet). Judge Broderick opined at sentencing that the case involved "'the most reckless, ruthless, disregard for human life and human dignity that I have seen in my time in this courthouse, and Mr. Lika was at the center of all that reckless disregard.'" (Ex. C at *7).

**B. Lika's Prison Disciplinary Record**

According to the PSR, the defendant smuggled drugs into the MCC on two occasions during the course of his pretrial detention, in addition to the attempted smuggling which was the subject of the indictment in *United States v. Xhevedet Lika*, 85 Cr. 90. (PSR at 8).

The defendant's prison disciplinary record reflects sanctions for a variety of offenses during his incarceration, including sanctions for (i) fighting on December 26, 1990, March 15, 2009, October 1, 2010, and June 11, 2019; (ii) use, possession, or attempted possession of drugs,

---

the Federal Records Center in Missouri on an expedited basis, but does not anticipate receiving the records until early May. As such, this factual recitation is based on review of (i) the underlying docket sheet (stored by the Government on microfiche); (ii) the Presentence Investigation Report dated March 7, 1985 (the "PSR"), attached hereto as Exhibit A; (iii) the Second Circuit's decision in *United States v. Xhevedet Lika*, 344 F.3d 150 (2d Cir. 2003), affirming denial of the defendant's motion to vacate his sentence under Rule 35(a), attached hereto as Exhibit B; (iii) the Government's opposition to the defendant's appeal of the denial of his motion to vacate his sentence under Rule 35(a), attached hereto as Exhibit C; and (iv) the defendant's instant motion.

The Honorable Cathy Seibel
April 27, 2020
Page 3

drug items, or alcohol on November 21, 1995, December 19, 1995, July 9, 1997 (two separate incidents), January 14, 1998, May 19, 1998, September 16, 1998, January 27, 2000, March 14, 2000, September 13, 2000, February 13, 2001, August 13, 2016, and November 30, 2016; and (iii) possession of weapons on September 2, 2003, and March 15, 2009. (Ex. E: Inmate Discipline Data).

### C. Lika's Medical Conditions



The defendant is ▮ years old. According to the defendant's medical records, he has ▮▮▮▮ (Ex. F: Medical Records a 1). In addition, the defendant ▮▮▮▮▮▮. (*Id.*).

The defendant also ▮▮▮▮

In responding to this motion, the Government conferred with the Bureau of Prisons (the "BOP") regarding the defendant's medical treatment. ▮▮▮▮.

## II.    Lika's Motion Must be Denied for Failure to Exhaust Administrative Remedies

The defendant seeks compassionate release pursuant to 18 U.S.C. § 3582, on the basis that his age and health conditions place him in the highest risk group to contract COVID-19. (Def. Mot. at 2). In the alternative, the defendant seeks a judicial recommendation that the BOP designate him to serve the remainder of his sentence in home confinement, pursuant to 18 U.S.C. § 3621. (Def. Mot. at 3).

As an initial matter, the Government notes that while the defendant asserts he is housed at FCC Butner, where there are "92 confirmed cases of COVID-19 and 5 inmate deaths" from COVID-19 (Def. Mot. at 2), the defendant is in fact housed at FMC Butner, a separate medical facility where there is one confirmed case of COVID-19, and where there have been no inmate deaths related to COVID-19. *See* COVID-19 Cases, Federal Bureau of Prisons, available at www.bop.gov/coronavirus.

Critically, the defendant does not dispute that he has failed to exhaust administrative remedies. The defendant asserts that on April 16, 2020, he submitted a letter "requesting

The Honorable Cathy Seibel
April 27, 2020
Page 4

compassionate release to home confinement to the Warden of FMC Butner," but the BOP has not responded. (Def. Mot. at 4). It's not clear whether the defendant contends he requested compassionate release under 18 U.S.C. § 3582, or release to home confinement under 18 U.S.C. § 3624, but the BOP has no record of the defendant's submission. According to BOP records, the defendant has not taken the first step in seeking compassionate release under 18 U.S.C. § 3582. (Ex. G: Admin. Remedy Generalized Retrieval). In any event, the defendant concedes the BOP has not made a decision on his request, and the request was made less than 30 days ago. (Def. Mot. at 4, 9).

Because exhaustion is mandatory under 18 U.S.C. § 3582, the Court lacks authority to grant compassionate release at this time.

### A. The Statute's Exhaustion Requirement Is Mandatory and Contains No Exceptions

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." *Id.* § 3582(c)(1)(A)(i). A motion under this provision may be made by either the BOP or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

Section 3582(c)(1)(A)'s exhaustion requirement is therefore mandatory. It is critical, in this context, to note that Section 3582(c)'s exhaustion requirement is statutory, and thus is not the sort of judicially-crafted exhaustion requirement that "remain[s] amenable to judge-made exceptions." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). By significant contrast, *statutory* exhaustion requirements "stand[] on a different footing." *Id.* There, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." *Id.* Thus, where a statute contains mandatory exhaustion language, the only permissible exceptions are those contained in the statute. *Id.*; *see also Bastek v. Fed. Crop. Ins.*, 145 F.3d 90, 94 (2d Cir. 1998) ("Faced with unambiguous statutory language requiring exhaustion of administrative remedies, we are not free to rewrite the statutory text.").

As described above, Section 3582(c)(1)(A) contains mandatory exhaustion language with no statutory exceptions. The plain language of the statute makes clear that a court "may not" modify a sentence unless, as relevant here, the defendant has first "fully exhausted all administrative rights" or waited 30 days after transmitting his request to the warden. Unlike the Prison Litigation Reform Act ("PLRA"), for example, there is no statutory qualifier that a

The Honorable Cathy Seibel
April 27, 2020
Page 5

defendant need only exhaust all "available" remedies.[2] *See also* 28 U.S.C. § 2254(b)(1)(A) (habeas statute requires exhaustion of all remedies "available in the courts of the State"). Thus, Section 3582(c)(1)(A) is a mandatory exhaustion provision with no applicable exceptions. *Cf. Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 750 (2017) (statute requiring that certain types of claims "shall be exhausted" is a mandatory exhaustion provision for those types of claims).  As Circuit Judge Sullivan, sitting by designation, recently explained, Section 3582(c)'s exhaustion requirement is "clear as day" and is therefore mandatory. *United States v. Ogarro*, No. 18 Cr. 373 (RJS), 2020 WL 1876300, at *3 (S.D.N.Y. Apr. 14, 2020).

    In recent weeks, numerous defendants around the country have cited the unusual circumstances presented by COVID-19 as a basis for compassionate release, and have argued that the exhaustion requirement should be excused. The only court of appeals to have addressed the question has rejected the argument and required exhaustion. *See United States v. Raia*, __ F.3d __, 2020 WL 1647922 (3d Cir. Apr. 2, 2020). In *Raia*, the Third Circuit recognized the serious concerns presented by COVID-19, but held that, in light of these concerns, as well as the BOP's statutory role and its "extensive and professional efforts to curtail the virus's spread, . . . strict compliance with Section 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical— importance."  *Id.* at *2.  The vast majority of district courts in this District have also required exhaustion despite COVID-19 claims.[3] These decisions are consistent with the plain language of Section 3582(c).

---

[2] In particular, the PLRA demands that an inmate exhaust "such administrative remedies *as are available*," meaning that the only permissible exception to exhaustion is where the remedies are "unavailable." *Ross*, 136 S. Ct. at 1856-58 (emphasis added); *see also id.* at 1855 (criticizing the "freewheeling approach" adopted by some courts of appeals to exhaustion requirements, and overruling precedent from the Second Circuit and other circuits that had read additional exceptions into the rule).  Here, no such exception exists in the statute.

[3] *See United States v. Wright*, 17 Cr. 695 (CM), 2020 WL 1922371, at *2 (S.D.N.Y. Apr. 20, 2020); *United States v. Demaria*, No. 17 Cr. 569 (ER), 2020 WL 1888910, at *4 (S.D.N.Y. Apr. 16, 2020); *United States v. Ogarro*, No. 18 Cr. 373 (RJS), 2020 WL 1876300, at *3-*5 (S.D.N.Y. Apr. 14, 2020); *United States v. Bonventre*, 10 Cr. 228 (LTS), 2020 WL 1862638, at *2-*3 (S.D.N.Y. Apr. 14, 2020); *United States v. Pereyra-Polanco*, 19 Cr. 10 (NRB), 2020 WL 1862639, at *1 (S.D.N.Y. Apr. 14, 2020); *United States v. Rabadi*, No. 13 Cr. 353 (KMK), 2020 WL 1862640, at *2-*3 (S.D.N.Y. Apr. 14, 2020); *United States v. Reese*, No. 12 Cr. 629 (VM), 2020 WL 1847552, at *2 (S.D.N.Y. Apr. 13, 2020); *United States v. Engleson*, 13 Cr. 340 (RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020); *United States v. Fana*, 19 Cr. 11 (GHW), 2020 WL 1816193, at *5 (S.D.N.Y. Apr. 10, 2020); *United States v. Canale*, 17 Cr. 287 (JPO), 2020 WL 1809287, at *2 (S.D.N.Y. Apr. 9, 2020); *United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020); *United States v. Ramos*, No. 14 Cr. 484 (LGS), 2020 WL 1685812, at *1 (S.D.N.Y. Apr. 7, 2020); *United States v. Crosby*, No. 09 Cr. 1056 (WHP) (S.D.N.Y. Apr. 7, 2020) (Tr. of 4/7 conference, at 13); *United States v. Woodson*, No. 18 Cr. 845 (PKC), 2020 WL 1673253, at *3 (S.D.N.Y. Apr. 6, 2020); *United States v. Arena*, No. 18 Cr. 14 (VM) (S.D.N.Y. Apr. 6, 2020) (Dkt. 354 at 2-3); *United States v. Hernandez*, No. 18 Cr. 834 (PAE), 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020); *United States v. Cohen*, No. 18 Cr. 602 (WHP), 2020 WL 1428778, at *1 (S.D.N.Y. Mar. 24, 2020). *But see United States v. Scparta*,

The Honorable Cathy Seibel
April 27, 2020
Page 6

To be sure, COVID-19 presents unusual circumstances, in which compassionate release decisions should be made expeditiously. But the text of Section 3582 contains no exigency exception for such circumstances, and indeed the text affirmatively refutes the availability of such an exception. While many statutory exhaustion provisions require exhaustion of all administrative remedies before a claim is brought in court, Section 3582 provides an alternative: exhaustion of all administrative rights *or* the lapse of 30 days from the warden's receipt of the inmate's request for compassionate release, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). This 30-day alternative rule is a "limited futility-like exception," and, therefore, "[g]iven Congress's decision to mandate exhaustion and specify a single alternative, the Court is not free to infer a 'general unwritten special circumstances exception.'" *United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020) (quoting *Ross*, 136 S. Ct. at 1856, 1862; *see also United States v. Arena*, No. 18 Cr. 14 (VM) (Dkt. 354 at 2) (S.D.N.Y. Apr. 6, 2020) (stating that there is "simply no authority that permits [the defendant] to circumvent the administrative exhaustion requirement" based on a claim of futility, because the ability to seek relief after 30 days constitutes "an express futility provision"). Ultimately, defendants' arguments regarding the need for a futility exception "boil[] down to a pragmatic insistence that a 30-day waiting period is simply too long to wait in the current health crisis. But there is nothing in the First Step Act or its history to suggest that courts may modulate the exhaustion waiting period when they see fit." *Ogarro*, 2020 WL 1876300, at *5.

As the Third Circuit properly recognized, the mandatory exhaustion requirement accommodates the valuable role that the BOP plays in the compassionate release process. Informed decisions about compassionate release require the collection of information, like disciplinary records and medical history, that the BOP is uniquely suited to obtain and which will benefit both the BOP and later the court evaluating such claims. The BOP is also well situated to make relative judgments about the merits of compassionate release petitions—particularly at a time like this when many inmates are making petitions advancing similar claims—and adjudicate those positions in a consistent manner. The Court may of course review those judgments, but the Congress expressed its clear intent that such review would come second, with the benefit of the BOP's initial assessment. *See United States v. Woodson*, No. 18 Cr. 845 (PKC), 2020 WL 1673253, at *3 (S.D.N.Y. Apr. 6, 2020).

To ignore this mandatory exhaustion requirement would be legal error.

**B. Lika's "Waiver" Argument Fails**

In the face of unambiguous statutory language, and numerous cases applying it in this district and elsewhere, the defendant argues that this Court should find an exception to the exhaustion requirement. (Def. Mot. at 9-12). The defendant's argument relies principally on

No. 18 Cr. 578 (AJN), 2020 WL 1910481, at *5 (S.D.N.Y. Apr. 20, 2020); *United States v. Russo*, 16 Cr. 441 (LJL), 2020 WL 1862294, at *7 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, No. 19 Cr. 541 (JSR), 2020 WL 18211988, at *4 (S.D.N.Y. Apr. 13, 2020); *United States v. Perez*, No. 17 Cr. 513 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020).

The Honorable Cathy Seibel
April 27, 2020
Page 7

*United States v. Scparta*, 18 Cr. 578 (AJN) (S.D.N.Y. Apr. 19, 2020), *United States v. Haney*, 19 Cr. 541 (JSR), 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020), and *United States v. Smith*, 12 Cr. 133 (JFK), 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020).

In *Scparta*, Judge Nathan held that Section 3582(c)'s exhaustion requirement is a claims-processing rule that is generally mandatory but may be waived by the Government. *Scparta*, 18 Cr. 578 at 9. But Judge Nathan went on to hold that Section 3582(c)'s exhaustion requirement may be excused for equitable reasons. *Id.* at 9-13. However, courts are not free to create equitable exceptions to statutory commands if doing so "would be inconsistent with the text of the relevant statute." *Young v. United States*, 535 U.S. 43, 49 (2002); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). Here, the text of the relevant statute is inconsistent with Judge Nathan's proposed exception. The plain language of the statute makes clear that a court "may not" modify a sentence unless, as relevant here, the defendant has first "fully exhausted all administrative rights" or waited 30 days after transmitting his request to the warden. Thus, even assuming it were correct that equitable exceptions to statutory claims-processing rules are appropriate in *some* contexts, *see Hamer v. Neighborhood Hous. Servs. Of Chicago*, 138 S. Ct. 13, 18 n.3 (2017) (reserving on question), the proposed exception is not permissible here. *See Ogarro*, 2020 WL 1876300, at *4 (rejecting application of equitable doctrines to this statute).

Judge Rakoff's decision in *Haney,* 19 Cr. 541 (JSR), 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020), does not compel a different result. In *Haney*, Judge Rakoff held that, notwithstanding the plain language of Section 3582(c)(1)(A), "Congress cannot have intended the 30-day waiting period . . . to rigidly apply in the highly unusual situation in which the nation finds itself today." *Id.* at *3. Judge Rakoff reached this conclusion by construing the 30-day waiting period as indicative of Congressional intent to accelerate judicial review. *Id.* at *4. But as Judge Sullivan has explained, given that Congress expressly chose *30 days* as the period after which judicial review is available, courts are not free to make a different choice. *Ogarro*, 2020 WL 1876300, at *5; *see also Roberts*, 2020 WL 1700032, at *2 ("Given Congress's decision to mandate exhaustion and specify a single alternative, the Court is not free to infer a 'general unwritten special circumstances exception.'" (quoting *Ross*, 136 S. Ct. at 1856, 1862)). And despite the suggestion that Congress cannot have foreseen circumstances as exigent as the ones now facing the defendant, that simply is not so. Rather, in cases presenting the most urgent circumstance – inmates diagnosed with a terminal illness – Section 3582(d) requires the BOP to process any application for compassionate release in 14 days. That the Congress allowed 14 days to process the claims of even a terminally ill inmate suggests that it could not have intended to allow a shorter period – which excusing exhaustion would provide – in a case, such as this, where the risk to the inmate, while serious, remains potential. It was error for Judge Rakoff to ignore this "glaring roadblock" to judicial review. *Raia*, 2020 WL 1647922, at *2.

Likewise, Judge Keenan's decision in *United States v. Smith*, 12 Cr. 133 (JFK), 2020 WL 1849748, at *3 (S.D.N.Y. Apr. 13, 2020) does not compel a different result, for two reasons. First, Judge Keenan found the BOP's decision to grant the defendant's release to a halfway house was at least a "partial satisfaction of the exhaustion requirement." *Id.* at *3. That circumstance is not

The Honorable Cathy Seibel
April 27, 2020
Page 8

present here. Second, Judge Keenan appeared to hold that *the court* had the power to waive exhaustion in light of the Government's position that *the Government* may waive exhaustion. *Id.* at *4. But that does not follow. The nature of a mandatory claims-processing rules are that they "assure relief to a party properly raising them, but do not compel the same result if the party forfeits them." *Eberhart v. United States*, 546 U.S. 12, 19 (2005); *see also Ogarro*, 2020 WL 1876300, at * 3 ("[A] timely asserted mandatory claim-processing rule must be strictly enforced by courts even though it is not a jurisdictional bar.").

In sum, the analysis of a statutory exhaustion requirement must "begin[] with the text" and utilize "ordinary interpretive techniques." *Ross*, 136 S. Ct. at 1856 and 1858 n.2. As set forth above, the text of Section 3582(c) provides for no exceptions, and waiver of the requirement for administrative exhaustion would be legal error.

### III.  Lika Has Not Demonstrated Extraordinary and Compelling Reasons For His Immediate Release

Because the defendant's motion must be denied for failure to exhaust administrative remedies, the Court need not and should not reach the merits of his motion. But if the Court were to reach the merits, it should reject the motion. While COVID-19 and the defendant's medical conditions are undoubtedly serious, the defendant has not met his burden to demonstrate compelling and extraordinary circumstances warranting immediate release. Further, the relevant Section 3553(a) factors counsel in favor of rejecting the defendant's motion.

#### A. Applicable Law

Under Section 3582, the Court "may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The relevant Sentencing Commission policy statement is U.S.S.G. § 1B1.13. That statement provides that the Court may reduce the term of imprisonment if "extraordinary and compelling reasons warrant the reduction," *id.* § 1B1.13(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," *id.* § 1B1.13(2); and "the reduction is consistent with this policy statement," *id.* § 1B1.13(3).

The Application Note describes the circumstances under which "extraordinary and compelling reasons exist":

(A) Medical Condition of the Defendant. —

(i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not

The Honorable Cathy Seibel
April 27, 2020
Page 9

required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is —

(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant. — The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family circumstances. -

(i)     The death or incapacitation of the caregiver of the defendant's minor child or minor children.
(ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons. — As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

*Id.* § 1B1.13 Application Note 1.

Regardless of the theory of "extraordinary and compelling reasons" under which a defendant proceeds, as noted above, the 18 U.S.C. § 3553(a) factors are relevant to whether release is warranted.  *See* 18 U.S.C. § 3582; U.S.S.G. § 1B1.13.

As the proponent of release, the defendant bears the burden of proving that "extraordinary and compelling reasons" exist.  *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *see generally United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

The Honorable Cathy Seibel
April 27, 2020
Page 10

### B. Lika Has Not Set Forth Extraordinary and Compelling Reasons Warranting Release

The defendant has not met his burden of establishing that extraordinary and compelling reasons justify the requested relief. The defendant relies on his medical conditions and age, along with the ongoing coronavirus pandemic, as grounds for his motion.

As set forth above, the defendant was ███████████████████████████████████████ ███████████████████████████████████████████████████ (Ex. F at 90). According to the defendant's ████████████████████████████████ ████████████████████████████████████ There is nothing in the record to suggest that the defendant's ███████████████, or that he is unable to provide self-care with in the environment of the correctional facility, to satisfy the first category of extraordinary and compelling reasons contemplated by U.S.S.G. § 1B1.13. Nor is there anything in the record to suggest that the defendant is experiencing a serious deterioration in physical or mental health because of the aging process, to satisfy the second category of extraordinary and compelling reasons contemplated by U.S.S.G. § 1B1.13. The defendant does not assert that family circumstances would justify his release as contemplated by the third category, and there is no reason to believe the Director of the BOP would determine there exists some other reason to permit the defendant's release. To the contrary, the defendant is classified by the BOP as high security, and low risk for recidivism, rather than medium or low security and minimum risk for recidivism, such that an application by the defendant for release to home confinement would not be prioritized by the BOP.

The defendant asserts that numerous courts in this jurisdiction and others have found similar circumstances sufficient to establish extraordinary and compelling reasons warranting release. (Def. Mot. at 13-14). The cases to which the defendant cites are inapposite for many reasons, most significantly because many of them address compassionate release for individuals approaching the end of determinate sentences, or individuals sentenced for nonviolent crimes. For example, in *United States v. Perez*, 2020 WL 1546422, (S.D.N.Y. April 1, 2020), the defendant was weeks from the conclusion of a three year sentence for kidnapping and conspiracy to commit kidnapping, and the Government did not object to his release on the merits. In *United States v. Zukerman*, 2020 WL 1659880 (S.D.N.Y. April 3, 2020), the defendant was sentenced to 70 months' imprisonment for tax evasion, and endeavoring to obstruct and impede the administration of the internal revenue laws, and was approximately 15 months short of potential release to home confinement. In *United States v. Tran*, 8:08 Cr. 197 (DOC), Dkt. No. 45 (C.D. Cal. Apr. 10, 2020), the defendant was 14 months from the conclusion of a 15-year sentence for conspiracy to commit Hobbs Act Robbery, interstate travel and acquisition of a firearm with intent to commit a robbery, and possession of a machine gun. In *United States v. Hernandez*, 18 Cr. 20474 (CMA) (S.D. Fla. Apr. 2, 2020), the defendant was less than a year from the conclusion of 39 months' imprisonment for healthcare fraud, and the Government did not oppose release. In *United States v. Resnick*, 2020 WL 1651508 (S.D.N.Y. April 2, 2020), the defendant had served 42 months of a 72 month sentence for mail and wire fraud, and conspiracy to commit the same. In *United States v. Foster*, 14 Cr. 324 (M.D. Pa. Apr. 3, 2020), the defendant was 45 days shy of release to home confinement, having served the majority of a 60-month sentence for conspiring to defraud his employer. In

The Honorable Cathy Seibel
April 27, 2020
Page 11

*United States v. Edwards*, 17 Cr. 00003 (W.D. Va. Apr. 2, 2020), the defendant ███████████ ██████████ and had served 18 months of a 36-month sentence for filing a false tax return, and conspiracy to structure currency transactions. In *United States v. Rodriguez*, 03 Cr. 271 (E.D. Pa. Apr. 1, 2020), the defendant was three years from the conclusion of a 20-year sentence for narcotics distribution and unlawful possession of a firearm. The most analogous case cited by the defendant is *United States v. Williams*, 04 Cr. 95 (N.D. Fla. Apr. 1, 2020), in which the defendant was released having served 15 years of a life sentence for armed bank robbery, brandishing a firearm in furtherance of the same, and unlawful firearms possession. However, in that case, the Government conceded that the defendant, age ███, was experiencing serious deterioration in physical and mental health because of the aging process. ████████████ ████████████. *Williams*, 04 Cr. 95, Dkt. No. 91 n.12. In addition, the defendant had an "exemplary" prison record, 04 Cr. 95, Dkt. No. 91 at 8, having earned his GED in prison, discharged all financial responsibilities, and received only one disciplinary infraction in nearly 16 years. *Williams*, 04 Cr. 95, Dkt. No. 87, Ex. B at 1, 3.

Here, by contrast, it is inconceivable that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," which finding is required by the relevant policy statement. *See* U.S.S.G. § 1B1.13(2). The defendant is serving a life sentence for violent criminal conduct. The defendant was described by Judge Broderick at sentencing as having been the center of the most "'reckless, ruthless, disregard for human life and human dignity'" Judge Broderick had ever seen in the courthouse. (Ex. C at *7). According to the PSR, trial testimony clearly demonstrated "the defendant's penchant for violence and intimidation, and his contempt for the American Judicial System." (PSR at 10). According to the Government's brief in opposition to the defendant's appeal of the denial of his Rule 35(a) motion, the defendant participated in the murder of one co-conspirator, attempted to murder another, conspired to murder three others, and, in the midst of trial, took out contracts for the murder of the case agent and the AUSA in charge of the prosecution. (Ex. C at *6, *7).

Taking into account the violent nature of the offense, the defendant's history and characteristics as recited in the PSR, and including his poor prison disciplinary record, and attempt to smuggle narcotics into the MCC during the course of proceedings against him, and the need to promote respect for the law, the Government submits that the Section 3553(a) factors counsel against the defendant's release.

The Honorable Cathy Seibel
April 27, 2020
Page 12

## **CONCLUSION**

For the foregoing reasons, the defendant's motion should be denied.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____
Lindsey Keenan
Assistant United States Attorney
(914) 993-1907


cc:    David Oscar Markus and Justine A. Harris (by ECF)